Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VICTOR AMMAH,<br><br>   Plaintiff,<br><br>v.<br><br>R. R. DONNELLEY & SONS COMPANY, JOHN C. POPE, IRENE M. ESTEVES, SUSAN GIANINNO, DANIEL L. KNOTTS, TIMOTHY R. MCLEVISH, JAMIE MOLDAFSKY, and JAMES RAY,<br><br>   Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Victor Ammah ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against R. R. Donnelley & Sons Company ("RRD" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between RRD and Chatham Delta Parent, Inc. ("Parent") and Chatham Delta Acquisition Sub, Inc. ("Acquisition Sub").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of RRD common stock.

7. Defendant RRD, an integrated communications provider, enables organizations to create, manage, deliver, and optimize their multichannel marketing and business communications.

The Company is incorporated in Delaware. The Company has corporate offices in New York. The Company's common stock trades on the NYSE under the ticker symbol, "RRD."

8. Defendant John C. Pope ("Pope") is Chairman of the Board of the Company.

9. Defendant Irene M. Esteves ("Esteves") is a director of the Company.

10. Defendant Susan Gianinno ("Gianinno") is a director of the Company.

11. Defendant Daniel L. Knotts ("Knotts") is President, Chief Executive Officer ("CEO"), and a director of the Company.

12. Defendant Timothy R. McLevish ("McLevish") is a director of the Company.

13. Defendant Jamie Moldafsky ("Moldafsky") is a director of the Company.

14. Defendant James Ray ("Ray") is a director of the Company.

15. Defendants Pope, Esteves, Gianinno, Knotts, McLevish, Moldafsky, and Ray are collectively referred to herein as the "Individual Defendants."

16. Defendants RRD and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

17. On November 3, 2021, RRD announced it had entered into a definitive merger agreement to be acquired by affiliates of Atlas Holdings LLC ("Atlas") for $8.52 per share in cash.

18. On December 14, 2021, RRD announced it had terminated its previously announced merger agreement with affiliates of Atlas and had entered into a definitive agreement to be acquired by affiliates of Chatham Asset Management, LLC for $10.85 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

3

## RRD to be Acquired by Chatham Asset Management for $10.85 Per Share in Cash

*RRD Terminates Merger Agreement with Atlas*

December 14, 2021 04:05 PM Eastern Standard Time

CHICAGO--(BUSINESS WIRE)--R.R. Donnelley & Sons Company ("RRD" or the "Company") (NYSE: RRD) today announced that it has entered into a definitive merger agreement (the "Chatham Merger Agreement") to be acquired by affiliates of Chatham Asset Management, LLC ("Chatham"), a leading private investment firm, in an all-cash transaction with a total enterprise value of approximately $2.3 billion and total equity value of approximately $897 million. RRD today also announced that it has terminated its previously announced merger agreement with affiliates of Atlas Holdings LLC ("Atlas"), dated November 3, 2021 (as amended on December 9, 2021, the "Amended Atlas Merger Agreement"), pursuant to which affiliates of Atlas had agreed to acquire RRD for $10.35 per share in cash. The termination of the Amended Atlas Merger Agreement follows the decision by Atlas to waive its contractual opportunity through December 16, 2021 to negotiate an amendment of the Amended Atlas Merger Agreement such that the transaction contemplated by the Chatham Merger Agreement would no longer constitute a "Superior Proposal" as defined in the Amended Atlas Merger Agreement.

The Chatham Merger Agreement has been unanimously approved by the RRD Board of Directors (the "Board"). Under the terms of the Chatham Merger Agreement, an affiliate of Chatham will acquire all of the RRD common stock not already owned by affiliates of Chatham for $10.85 per share in cash. The purchase price represents a premium of 4.8% over $10.35, the price per share of RRD common stock under the Amended Atlas Merger Agreement.

"This transaction, which follows a robust and thorough process, is a recognition of the enormous value created by our talented employees, whose passion and dedication to the success of RRD and our clients has enabled us to achieve this important milestone," said Dan Knotts, RRD President and Chief Executive Officer. "Under Chatham's ownership, I expect that RRD will remain an industry leading marketing and business communications company, with enhanced resources and flexibility, to effectively meet the evolving needs of our clients."

"As a longstanding, supportive investor in RRD, we are pleased to have reached this agreement with the Company. RRD possesses a strong portfolio of assets and capabilities, and we look forward to leveraging our deep understanding of its business, as well as our extensive experience in the print media and related industries, to drive long-term value for all stakeholders," said Chatham.

**Certain Terms, Approvals and Timing**

4

The Chatham transaction is expected to close in the first half of 2022, subject to customary closing conditions, including the approval of RRD stockholders and receipt of regulatory approvals.

The Chatham Merger Agreement contemplates that affiliates of Chatham will finance the transaction through a combination of committed equity financing provided by Chatham and certain of its affiliates and debt financing for which Jefferies Finance LLC and Wells Fargo Capital Finance have provided commitments. The transaction is not subject to a financing condition.

RRD expects to announce a special meeting of stockholders to approve the Chatham transaction at a later date. Chatham and certain of its affiliates, which hold approximately 14.99% of the outstanding shares of RRD common stock, have entered into a voting agreement with RRD, pursuant to which they have agreed, among other things, to vote their shares of RRD common stock in favor of the transaction.

Upon completion of the Chatham transaction, RRD's shares will no longer trade on the New York Stock Exchange, and RRD will become a private company.

The foregoing description of the Chatham Merger Agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the Chatham Merger Agreement, which RRD will be filing with the U.S. Securities and Exchange Commission (the "SEC") on Form 8-K. References herein to terms of the Amended Atlas Merger Agreement are subject to, and are qualified by reference to, the full terms of the Amended Atlas Merger Agreement, which RRD filed with the SEC on Form 8-K on November 4, 2021 and December 10, 2021.

**Advisors**
Centerview Partners LLC is serving as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to RRD.

Jefferies LLC is serving as financial advisor and Olshan Frome Wolosky LLP and Lowenstein Sandler LLP are serving as legal advisors to Chatham.

**About RRD**
RRD is a leading global provider of multichannel business communications services and marketing solutions. With 30,000 clients and 33,000 employees across 28 countries, RRD offers the industry's most comprehensive offering of solutions designed to help companies—from Main Street to Wall Street—optimize customer engagement and streamline business operations across the complete customer journey. RRD offers a comprehensive portfolio of capabilities, experience and scale that enables organizations around the world to create, manage, deliver, and optimize their marketing and business communications strategies.

19. On December 27, 2021, RRD received an unsolicited non-binding acquisition proposal from Party C to acquire RRD for $11.00 per share in cash.

20. On December 28, 2021, Parent sent a letter to RRD responding to Party C's December 27th offer (the "December 28 Chatham Letter"). Parent was critical of Party C's proposal, arguing it was "highly conditional" and "lack[ed] committed financing[.]" Proxy Statement (defined below) at 66.

21. On December 29, 2021, the Board determined that Party C's December 27th proposal would "reasonably be expected to lead to a Superior Proposal." Proxy Statement at 66. In making this determination, the Board considered, among other things, "Party C's knowledge of and familiarity with RRD's business and industry," the "substantial due diligence that Party C had completed during the go-shop process under the Atlas Merger Agreement," Party C's "retention of sophisticated advisors and backing by credible financing sources." and Party C's "determination that the only required antitrust approvals are the United States, Poland and Netherlands[.]" *See Id*. at 66-67.

22. On December 30, 2021, RRD purportedly delivered to Parent a letter responding to the December 28 Chatham Letter.

23. On January 18, 2022, representatives for the Company and Party C discussed certain updates to Party C's December 27th proposal, including an increase in the offer price to $11.50 per share in cash. Party C's advisors noted that Party C had "substantially completed its financial, legal, tax and other due diligence" and would "require an additional three weeks to obtain . . . committed financing, which Party C expected on February 8, 2022." Proxy Statement at 68.

24. On January 21, 2022, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") under Section 14(a) of the Exchange Act in connection

with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

25. The Proxy Statement, which recommends that RRD shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by RRD's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

26. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board and Reasons for the Merger; (iii) Opinion of Centerview Partners LLC; and (iv) Projections Prepared by RRD's Management.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated February 23, 2022 shareholder vote on the Proposed Transaction, RRD shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning the Company's Financial Projections

28. The Proxy Statement omits material information concerning the Company's financial projections.

29. The Company discloses three sets of financial projections that are referred to in the Proxy Statement as Scenario 1, Scenario 2, and Scenario 3 projections (collectively, the "RRD Projections," with Scenario 1 referred to as the "Base Projection").

7

30. The Base Projection assumes approximately 1% sales compound annual growth rate and 2% Adjusted EBITDA compound annual growth rate from 2021 through 2026. *See* Proxy Statement at 84. Certain "items in the Base Projection were also made available . . . to Centerview for purposes of preparing its financial analyses and fairness opinion provided to the Board on December 14, 2021 in connection with its consideration of . . . the [Proposed Transaction]." *Id*. at 83.

31. The Scenario 2 projections assume a 5% reduction to Adjusted EBITDA from 2022 through 2026. *See Id*. at 84.

32. The Scenario 3 projections assume a 10% reduction to Adjusted EBITDA from 2022 through 2026. *See Id*.

33. In other words, the Scenario 2 and Scenario 3 projections each reflect a more pessimistic outlook than the Base Projection. Centerview had relied upon the Base Projection in rendering its fairness opinion.

34. Accordingly, the Proxy Statement fails to disclose and must disclose certain material information relating to the Base Projection, Scenario 2 projections, and Scenario 3 projections, including: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, (iii) Levered Free Cash Flow, and (iv) Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

35. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of RRD, and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company and combined company.

Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

36.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Centerview's Analyses

37.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning Centerview's analyses.

38.     With respect to Centerview's "*Selected Public Company Analysis*," the Proxy Statement fails to disclose: (1) the specific qualitative factors Centerview considered in only selecting Deluxe Corporation, Ennis, Inc., QUAD/Graphics, Inc., and Transcontinental Realty Investors Inc. in its analysis; and (2) the specific underlying rationale for selecting a reference range of multiples of enterprise value to Estimated 2022 EBITDA of 4.25x to 5.00x when, in fact, the range of multiples for three of the aforementioned four companies was between 5.8x and 7.3x (i.e., 7.3x for Deluxe Corp., 6.1x for Ennis, 5.8x for Transcontinental).[1]

39.     This information must be disclosed to make the Proxy Statement not misleading. This omitted information must also be disclosed because, using these four selected companies,

---

[1] With respect to the reference range, the following generic statement is insufficient:

> In selecting this reference range, Centerview made qualitative judgments based on its experience and professional judgment concerning differences between the business, financial and operating characteristics of RRD and the Selected Companies that could affect their public trading values in order to provide a context in which to consider the results of the quantitative analysis.

> Proxy Statement at 79.

9

Centerview derived a range of implied values per share of RRD common stock of $3.70 to $7.30, which is materially less than the merger consideration of $10.85. *See* Proxy Statement at 79.

40. With respect to Centerview's "*Selected Precedent Transactions*" analysis, the Proxy Statement fails to disclose the specific qualitative factors Centerview considered in only selecting these five selected transactions:

| Date Announced | Target | Acquiror | Enterprise Value / LTM EBITDA |
| --- | --- | --- | --- |
| September 15, 2020 | LSC Communications, Inc. | Atlas Holdings LLC | 4.2x[2] |
| October 31, 2018 | LSC Communications, Inc. | QUAD/Graphics, Inc.[3] | 5.7x[4] |
| December 18, 2017 | IWCO Direct Holdings Inc. | Steel Connect, Inc. | 5.8x |
| October 24, 2013 | Consolidated Graphics, Inc. | RRD | 5.8x[5] |
| October 10, 2012 | Vertis Holdings, Inc. | QUAD/Graphics, Inc. | 5.1x[6] |

41. This information must be also disclosed because: (i) three of the transactions were announced far in time years ago in 2012, 2013, and 2017; (ii) the 2018 transaction between LSC and QUAD/Graphics was terminated in 2019 and did not even close; and (iii) the multiples of the most recent 2020 transaction between LSC and Atlas "would be 3.1x [not 4.2x] based on 2020E EBITDA . . . and COVID-19 as provided in company filings."

42. Additionally, the Proxy Statement fails to disclose the specific underlying rationale for Centerview selecting a reference range of multiples of EV/LTM Adjusted EBITDA Multiples of 5.0x to 6.0x. By Defendants' own admission, none of the selected transactions above had a multiple greater than 5.8x. Indeed, the most recent transaction's multiple was 3.1x (as buried in a footnote of the Proxy Statement), which is even farther outside the reference range than the 4.2x figure.

43. This information must be disclosed to make the Proxy Statement complete and more accurate, and in light of the fact that Centerview used this information to calculate implied values per share of RRD common stock of $6.70 to $11.40, the outer limit just high enough to

10

make the $10.85 per share offer seem reasonable.

44.     The Proxy Statement fails to disclose the following concerning Centerview's *Discounted Cash Flow Analysis*: (1) all line items underlying the projections utilized in the analysis; (2) the terminal values; the (3) the terminal year EBITDA; (4) the individual inputs and assumptions underlying the (i) terminal multiples ranging from 4.0x to 5.0x, and (ii) range of discount rates from 7.5% to 9.50%; and (5) the perpetual growth rates used in the analysis (as applicable).

45.     The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

46.     Without the information described above, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

47.     This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

   3. **Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

48.     The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

49.     The Proxy Statement provides that the Company entered into confidentiality agreements with various potential suitors and/or acquirors, including Atlas, Party A, and Party C.

50.     The Proxy Statement, however, fails to disclose all relevant terms of RRD's

11

confidentiality agreements with the aforementioned companies, including whether such agreements contain "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

51. Without this information, the Company's shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable RRD shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

52. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

53. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

54. The Proxy Statement provides the following concerning the interests of the Board and the Company's officers in the Proposed Transaction:

> **Interests of the Directors and Executive Officers of RRD in the Merger**
> In considering the recommendation of the Board that holders of RRD Common Stock vote to adopt the Merger Agreement, our stockholders should be aware that certain of RRD's non-employee directors and executive officers have interests in the Merger that may be different from, or in addition to, those of RRD's stockholders generally. The Board was aware of and considered these interests, among other matters, in approving the Merger Agreement and the Merger, and in recommending that the Merger Agreement be adopted by RRD stockholders.

55. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers

12

and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

56. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

57. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

60. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and

13

misleading Proxy Statement.

61. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

62. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned

company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

68. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 1, 2022                                     Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
             zhalper@halpersadeh.com

*Counsel for Plaintiff*